Our next case for today is United States v. Christopher Reynolds, 2024-25, and we should have Mr. Turner and Ms. Boyle, and it appears that we do have Mr. Turner and Ms. Boyle. So we will listen to what you have to say, Mr. Turner. Thank you. Good morning, Your Honors, and may it please the Court. The sole question on appeal is whether the Fifth Amendment right to be free from visible shackles is just a tactical decision or instead a fundamental right that requires a defendant's informed personal consent before it can be waived. The Supreme Court's decision in DEC answers this question and makes clear that it is a fundamental right that required Mr. Reynolds' personal waiver. Your Honors, I'd like to begin first by addressing the government's 11th-hour filing last night, which purports to be a 28-J letter. First, it isn't. It's an obvious attempt to resurrect an argument that the government waived by not raising it in their response brief. That argument is that the plain error review standard should apply. The government never argued for that in their response brief. They did argue that plain error would apply to the pre-waiver shackling, which was more of a procedural argument, but they did not argue for plain error regarding the visibility of the shackling to the jury. They also, in their 28-J letter, argue that any shackling was harmless beyond all reasonable doubt. Again, they never argued for this in their response brief. It's waived. Footnote one in our reply brief addresses the plain error waiver, and we'd ask the court to strike the government's 28-J letter, which is not a 28-J letter. Mr. Turner, I've got a question for you concerning your brief and I believe the blue brief, and I believe I'm staying away from any items. Let me just confirm before I open my mouth here. I specifically referenced the top of page six, and that's not a redacted portion of the blue brief. That top paragraph, you talk about Mr. Reynolds disputing defense counsel, discussing waiver, et cetera, that paragraph is without citations. Where does that come from? What's the basis for that statement in the brief in the record? Your Honor, there is no basis for that in the record. That is Mr. Reynolds' legal position, and I guess I would direct the court to the Gonzalez case where Justice Kennedy notes that there was nothing in the record for the court to affirmatively find that the defendant in that case had waived his right or had even known about the right, and that's exactly the situation we have here. There's nothing in the record that would permit this court to infer that Mr. Reynolds waived his right. The key question then comes back to, is this a tactical decision that Mr. Reynolds' trial counsel could unilaterally waive, or is it a fundamental right that requires personal participation by the defendant under Gonzalez? So just to summarize your statement, because the government complains about this in their brief, your statement is that you're, in a sense, pointing out a record gap here. You're doing it by telling us what Mr. Reynolds thinks, which may be a step too far, but essentially you're trying to use this to show a gap in the record? That's precisely right, Judge Wood. There is no basis in the record for the court to find waiver here, and this is consistent with this court's longstanding waiver principles, which the court will never lightly presume waiver. It's got to be clear. There's got to be evidence that the defendant in the case of a fundamental constitutional right not only voluntarily waived the right, but knowingly and intelligently waived the right. The record here does not support that. In fact, I don't think the record even supports that Mr. Reynolds' counsel knowingly and intelligently waived the right. Based on the colloquy out the sidebar, he admitted to not knowing the implications of this right. But, Mr. Turner, wasn't that prior to his discussion with his client, because he goes back and talks to his client at the table, and at the table they have this discussion, he reports back as an officer of the court, he's left it in my hands, I've made the decision to go forward because it's 4.20 p.m. Your statement is cabin to the initial sidebar discussion, not the later discussion that they had, correct? Judge Brennan, my understanding, based on the record, and I agree that it's not abundantly clear, but on docket 168, beginning on page 158, there is a complete sidebar conversation between the court and Mr. Reynolds' counsel. Mr. Reynolds isn't present there because he's back at the table shackled. At that initial sidebar conversation, Mr. Reynolds' counsel waives the right before ever talking to him. After the sidebar, Mr. Reynolds' counsel goes back and informs him what's happening. Look, we have no witnesses to call. The judge is pressuring me to call my next witness, you're it, we're up. And that's what happens. At the end of the day, on day two, the judge revisits this issue, but there's no indication on the record that there is an intervening conversation with Mr. Reynolds before the waiver is placed on the record. And I think the record actually more properly supports that there was no intervening conversation with Mr. Reynolds. Wouldn't the inference have been, though, that after Mr. after the attorney goes back and speaks with Reynolds at the table, that if this was going to be a problem, the attorney would say something to Judge Barker and Judge Barker wouldn't go forward. That was the whole purpose of the attorney going back to the table, correct? You know, Your Honor, that that may be the case, but I think it sort of dances around the issue of did Mr. Reynolds knowingly and intelligently waive this right, which is really required if it's a fundamental constitutional right. That's why Rule 11, it's not the only way to do it, but as this court has said, it's probably the best way to do it, requires an on-the-record colloquy with the court where the court informs the defendant of its right. And if it's the fundamental right, I think the legal answer here is clear, that Mr. Reynolds' Fifth Amendment right to be free from visible shackles was violated. The question then becomes, was it harmless beyond all reasonable doubt? And under deck is an inherently prejudicial violation. And the government has presented nothing to show that this was not harmless beyond all reasonable doubt. And in fact, as we point out in our- Mr. Terrence, do you want to address the government's argument about what goes to prejudice given the nature of the defense, the public authority defense, and the initial questions that Mr. Reynolds faced about being incarcerated when he did take the stand? Yeah, Your Honor. There's two tacks here and two points that need to be made. First, incarceration alone or knowledge of incarceration alone by the jury is not the same thing as the jury seeing a defendant in shackles. This court and the Supreme Court has drawn a distinction between those two, and it's much more prejudicial for the jury to see a defendant in shackles than merely to know he's incarcerated. One communicates where the defendant is held. The other communicates who the defendant is. And as this court said in Stevens and Harrell and Moss, seeing a defendant in shackles is apt to think they're dealing with a bad dog and can be devastating to the defendant's defense. In this case, that's what happened. Mr. Reynolds needed to take the stand in order to advance his affirmative defenses. It was very important then that the jury accepted his testimony as credible rather than coming from a dangerous criminal who they view as, in the words of Moss, a mad dog. Incredibly prejudicial, and I don't think there's any way around that fact based on this court's precedent and based on what happened. The government does reference the Cooper case, which is, I think, an odd case that I'd like to spend a little bit of time on, and then if the court would allow me to reserve the rest of my time for rebuttal, I'd appreciate that. Cooper is a pre-Gonzalez case. I think it's at odds with Gonzalez. Cooper allows for the defense counsel to waive a right, provided it meets this two-prong standard, and it's sort of a quasi-fundamental, quasi-tactical right at issue. It's dealing with a Sixth Amendment right. I think it's clear from this court's decision in Cooper that it's cabined and unique to the Sixth Amendment, but even so, it's also pre-Gonzalez and is at odds with Gonzalez, which says very clearly, if it's a fundamental right, defense counsel cannot waive that right without the defendant's personal participation. Thank you, Honors. Unless you have questions, I'll reserve the rest of my time. Thank you, Mr. Turner. Ms. Boyle. Good morning, Your Honors. May it please the Court, my name is Catherine Boyle on behalf of the United States. The primary issue in this case is waiver, and the government here believes that the defendant, Christopher Reynolds, waived, through counsel, his right to appear unshackled before the jury. But aren't those words, through counsel, the issue? I mean, there's nothing I see in the record where Mr. Reynolds stands up and says to the court, I waive my right not to be shackled. We have the lawyer, we have that colloquy, and then we have whatever happened, you know, when he goes back to the table, when once again, it's the lawyer saying, he's agreed to leave this up to me, whatever that is. But he doesn't, what possible tactical advantage would he have had in waiving this right? I thought the idea that it showed that it somehow enhanced the public authority defense was quite unpersuasive. Well, Your Honor, first, we agree that Mr. Reynolds did not personally say on the record that he had waived his objection to appearing before the jury unshackled. However, as Judge Brennan pointed out, we did note that it appears from the record that counsel did have a conversation with Mr. Reynolds about this, where he said that he did not dissent to counsel's decision to waive his objection to appearing. And that's counsel's representation. As Judge Brennan said, an officer of the court does. So counsel says, he's decided to leave it up to me. But we don't have the kind of, if it had been a decision to testify or not, that would have been insufficient, right? Yes, Your Honor, that's correct. Right. Okay. So we still have to come back. And what about the tactical advantages of this waiver? What are they? Well, Your Honor, we do believe there are tactical advantages. The courts have repeatedly recognized and have even said in some cases it could be somewhat common for, for instance, a defendant to decide to appear in front of the jury in prison garb. But what if prison garb isn't the same as shackles? I mean, if you're clunking across with, you know, metal restraints on you, I mean, it sounds like, you know, a Dumas movie or something. It's a pretty serious message the jury gets. This person is so dangerous that unless we physically restrain him, he might jump on you in the jury box. Well, Your Honor, I understand that point, but I am not sure that the jurors would so closely parse the difference between prison garb and shackles. That said, I recognize that courts have suggested that shackles can be somewhat more prejudicial. I do think, though, that in this case, the shackles could contribute sort of to the pathos of the defendant's position. His entire argument here is that Sergeant Wildhour has been using him to advance his investigations and then has just abandoned him, sort of thrown him off to jail when he became no longer useful or it was no longer expedient for the officer. So that may be partly right. But even so, in the shackles, none of that makes any difference if the jury doesn't believe him. And if he's a wild and crazy guy who has to be shackled, then how do you erase that prejudice from the jury's mind? How do you erase the idea that he's now guilty until proven innocent? Well, first, Your Honor, if I may just make one additional point, I think this court recognized in Harrell that Estelle was a somewhat analogous case, and Estelle is a case where prison garb is discussed and the Supreme Court says that the defendant could sort of waive the due process violation through counsel where he didn't object. So I believe this court has recognized an analogy. But the court in the prison garb case, case says, has said that the jury knows that this person is detained. The jury knows that this person is somebody who's spending time in prison. So the marginal additional information the jury gets from prison garb is limited, if shackles are different. Yes, Your Honor, and this is one of the reasons we believe one of the key issues in this case is Mr. Reynolds waiver. We do not believe here, although the right to appear unshackled certainly has constitutional dimensions. And that's something that we acknowledge. It is not a fundamental right and it must be waived through counsel. It's important that neither the Supreme Court. But it is an ancient rule, as Dex says, deeply embedded in American law, going all the way back to Blackstone. The court said lots of pretty serious things about this, right? That's not me. That's Dex against Missouri. Your Honor, that could cut two ways. In that case, the Supreme Court and the appellate courts have certainly had time to identify this over the years as a fundamental right. And they haven't. The list of fundamental rights is short. How often has it happened? Maybe maybe everybody's obeying the rules because they understand what they are. Your Honor, I can't speak to how often defendants have been shackled before a jury, but it certainly seems significant that the courts over the years have not suggested in any way that this is a fundamental right. And it's also notable that the list of fundamental rights is very short. It includes the right to plead not guilty or proceed to trial, the right to a jury trial, the right to counsel or proceed, per se, the right to appeal and the right to testify on one's behalf. What about the right to be present at your trial? Your Honor, that is interesting because I think the right to be present at your trial, much like the right to shackles, both of those can implicate client potentially courtroom security issues. And a defendant certainly does have the right to be present at their trial. But for instance, where a defendant causes a significant amount of disruption in the courtroom and is admonished on the record, I believe it's Rule 43 that says that's essentially a waiver and the defendant would then waive their right. So it would be a personal waiver of their right to be present at their trial. And so this case would be entirely different if Mr. Reynolds had been misbehaving and the district judge had said, if you're going to be here at all, you're going to be here shackled because, frankly, you have waived any right not to be by your behavior, waiver by action. I just think we'd be having a completely different argument if that were the case. But we don't have any finding like that. Yes, Your Honor, that goes back to our point that we believe that Mr. Reynolds counsel was able to waive this right for him. We believe this is better left in the area of tactical rights. And I think there's an interesting point. We've discussed DEC in terms of it makes the point that a criminal defendant has is the right to remain free of physical restraints that are visible to the jury. DEC shows that the right has constitutional dimensions. But DEC also says that right may be overcome in a particular instance by essential state interests such as physical security, escape prevention or courtroom decorum. That's interesting because it places a defendant's right not to be shackled behind an and I think that helps differentiate this right from other courts. The Supreme Court has other rights that the Supreme Court has identified as fundamental. And I think there's evidence here that this is a tactical decision properly left to trial counsel. I do think Estelle versus Williams is an instructive case. The Supreme Court recognized in Estelle that, as with shackles, compelling a defendant to testify in prison garb may influence the jury. But the court also says in that case, there might be instances where a defendant prefers to stand trial before his peers in prison garments. They even said that's a not uncommon defense tactic that is employed to elicit sympathy from the jury. And I think that shackles could certainly add to the sympathy, particularly in a case like this, where the entire point the defendant is making is, look at how I tried to help law enforcement look at what they have done to me. I think that the shackles could almost put an exclamation point on this idea of the plight he has been reduced to. And that's all part and parcel of his public authority defense, which shows that this could this is a tactical decision on the part of the attorney. The counsel didn't say anything remotely like what you're saying. I mean, it's a little weird for the government to be standing up for what counsel did when all counsel says his first thing is when the court says, how am I going to get him across the courtroom, defense counsel immediately take a break. In other words, don't let the jury see him. Court says, I hate to do that. Then the court says, well, I guess we have to take a break. And then then she says, do you want to waive any interest? And he says, I don't know. I've not found the implications. He's not adopting a tactical, oh, they're going to feel so sorry for him. Every word out of his mouth. And then then she pushes him, you have to tell me you either waive or I have to excuse everybody. And then he's trying to review his choices. And then he finally says, well, I'll waive his interest in not disclosing that he's in chains. And of course, it's OK. So not a word of what you just said appears in that colloquy. Your Honor, I see I'm almost out of time, but if I may respond, please do. I believe counsel does initially say, as an as an initial matter, it's defense counsel's job, even if there is a bit of time pressure from the court to stand up for their clients' rights. And we have no indication here that defense counsel didn't do so. But yes, it's true. Defense counsel initially says, I haven't considered the implications of that. And I believe the trial court responds, well, it's your decision. You have to decide whether your client is going to waive this or not. Trial court doesn't tell him he has to waive it or force his client to waive it. He puts the decision back on him. I believe the record shows the defense counsel then considered it, decides to do it. The sidebar at the end of the day shows that he, in fact, went back to the table and talked with Mr. Reynolds about it, told Mr. Reynolds what he was planning. Mr. Reynolds said, I leave it to your discretion. This is a considered decision. There's evidence that there was discussion of it on the record. And just because the defense counsel needed a moment to think through the implications of the decision. But it was already too late by the time that conversation happened. He'd already had to testify. With the shadow. Your Honor, the conversation with the sidebar with the judge occurred at the end of the day. I believe that based on my review of the record, I have the impression that defense counsel directly after speaking with the judge and saying, you know, we're planning to have Mr. Reynolds testify. I think that was the point where he went back to Mr. Reynolds. I think it's merely the reporting of this conversation to the judge that occurred after Mr. Reynolds testimony, not the actual conversation with Mr. Reynolds. Okay. Your Honor, I see him over my time. If there are any other questions, government will rest on the arguments in this brief. Thank you very much. All right. Thank you. Anything further, Mr. Turner? Yes, Your Honor. Thank you. This is a novel issue. Both parties recognize that this court has never addressed it, nor has any other circuit. But it is a narrow one. And as Judge Wood pointed out, I don't think this comes up often because most district court judges would never allow this to happen. They bend over backwards to make sure that a defendant in shackles is properly screened. Take a break. It's a you know, it's a little bit of an imposition, but it's not much and it's worth it. You know, the government basically is arguing from silence that this isn't a fundamental right because it's never been held to be a fundamental right. That begs the question. The question again is under Gonzalez, under Hill, under that framework, is this just a tactical decision? Of course, every fundamental right has a tactical component to it, whether to testify on your own behalf, whether to take an appeal. I mean, there are tactical components, but is it just a tactical right? And the court in Gonzalez, I think, provides helpful examples. Tactical decisions are things that pertain to evidence, things that pertain to scheduling. This, on the other hand, the shackling right pertains to the person and who Mr. Reynolds is. It affects his other fundamental rights that this court has long held to be fundamental rights. And by the way, those are not a closed set as this is a Supreme Court demonstrated in McCoy. It is expanding and the court has never treated it as a closed set. Instead, the fundamental question has to be what is the nature of the right? And the appellant cements, Your Honors, that the nature of this right is fundamental. Thank you. Thank you. And thank you very much, Mr. Turner, for taking the appointment. We appreciate it. Thanks as well, of course, to Ms. We will take this case under advisement.